UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXEY GENNADYEVICH KHARIS, <br> Plaintiff, <br> v. <br> JEFFERSON B SESSIONS, III, et al., <br> Defendants. | Case No. 18-cv-04800-JST <br><br> **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND MOTION TO SEAL** <br><br> Re: ECF No. 1, 3 |

Before the Court is Petitioner Alexey Kharis's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Kharis is currently in detention while he awaits the conclusion of asylum and removal proceedings. Kharis asks the Court to order his immediate release from custody, arguing that the immigration judge ("IJ") and Board of Immigration Appeals ("BIA") committed legal and constitutional errors in determining that Kharis did not merit release on bond. In addition, Kharis has filed a motion to file under seal certain documents in support of his petition. ECF No. 3.

For the reasons stated below, the Court grants motion to seal, and the Court grants the petition in part.

## I. BACKGROUND

Kharis is a 43-year-old Russian citizen who lawfully entered the United States on a B-2 nonimmigrant visa on September 10, 2014. ECR No. 2 at 51. Kharis's wife, Anna Tutckaia, and two children also entered the United States on B-2 nonimmigrant visas in September 2014. *Id.* at 9. On March 14, 2015, the United States Citizenship and Immigration Services ("USCIS") granted Tutckaia a change of status to F-1 nonimmigrant status (a student visa), allowing Kharis to obtain F-2 nonimmigrant status as a derivative spouse. *Id.* at 10.

In June 2015, the International Criminal Police Organization ("Interpol") published a "Red Notice" at Russia's request, stating that Kharis was a fugitive subject to a Russian arrest warrant for his participation in a criminal group that allegedly embezzled 4 billion roubles (approximately $114 million) from a state-owned shipyard construction project. ECF No. 4-1 at 7-8. Interpol publishes these notices at the request of member countries, distributing them to other member countries and their law enforcement agencies. ECF No. 4-4 at 22. "Once published by Interpol, each member country determines what effect to give to a Notice within its jurisdiction according to its national law and practice." *Id.* It is undisputed that the United States does not consider a Red Notice an independent basis for an arrest because "it does not meet the requirements for arrest under the 4th Amendment." *Id.* A few months later, the Russian government charged Kharis with various financial crimes in connection with the allegations contained in the Red Notice. ECF No. 4-1 at 10.

On May 2, 2016, while still in lawful F-2 nonimmigrant status, Kharis filed an application for asylum and withholding of removal. ECF No. 2 at 17-30. In his asylum application, Kharis disclosed the nature of the charges against him and claimed a reasonable fear based on political persecution. ECF No. 2 at 32. According to Kharis, the Russian government initiated a criminal prosecution against his business partner, Igor Borbot, in retaliation for Borbot reporting government corruption related to the shipyard project. ECF No. 3-3 at 11. Kharis claimed that when he refused to give false testimony against Borbot and instead threatened to go public, he also became a target, leading to the issuance of the Red Notice and the subsequent criminal charges. *Id.* at 13.

While Kharis's asylum application was still pending, USCIS revoked Tuckaia's F-1 nonimmigrant status, and with it, Kharis's F-2 nonimmigrant status. ECF No. 2 at 9-15. USCIS cited the fact that Kharis was "wanted by the judicial authorities of Russia on charges of a large scale fraud" as one of the reasons Tuckaia could no longer establish admissibility. *Id.* at 10.

On August 16, 2017, Kharis attended an appointment to pick up a decision on his asylum application at the San Francisco Asylum Office. *Id.* at 50-51. There, the government served Kharis with a Notice to Appear for removal proceedings, charging him as removable under 8

U.S.C. § 1227(a)(1)(B) for overstaying his visas. *Id.* at 41-42. The Department of Homeland Security (DHS) determined that custody was necessary because Kharis was a "flight risk due to [the] warrant issued by Russia." *Id.* at 46. Kharis sought review of that custody determination and received a bond hearing before an IJ on August 30, 2017. ECF No. 11 at 4-18.[1] The IJ denied bond, concluding that Kharis was a flight risk because of the Red Notice. *Id.* at 15.

Kharis appealed the IJ's bond determination to the BIA on September 29, 2017. ECF No. 14-1 ¶ 14. Pursuant to agency policy, the IJ issued a written memorandum explaining the bond determination. ECF No. 2 at 423-24. On January 5, 2018, the BIA affirmed the IJ. *Id.* at 427-28.

On March 2, 2018, Kharis filed a motion for a redetermination of custody status with the IJ. ECF No. 2-1 at 4-16. With his motion, Kharis submitted additional evidence disputing the reliability of the Red Notice, among other things. *See id.* at 20-21. Three days later, the IJ denied the motion in a minute order, finding no changed circumstances. ECF No. 4-4 at 5.

On May 7, 2018, the IJ denied Kharis's asylum claim on the merits. *See id.* at 249. Kharis's appeal of the IJ's asylum determination is currently pending with the BIA. *Id.* at 268.

On July 17, 2018, Kharis filed another motion for custody redetermination, *id.* at 7, accompanied by further evidence of the unreliability of Red Notices and abuse of the system by the Russian government. *See id.* at 17. DHS opposed the motion, arguing the Red Notice remained pending and that Kharis's additional evidence did not constitute a material change in circumstances. *Id.* at 249-51. Further, DHS argued, Kharis presented a greater flight risk once the IJ denied his asylum claim. *Id.* at 250. On July 18, 2018, the IJ denied Kharis's motion, adopting the reasons set forth in DHS's opposition. *Id.* at 255. Kharis appealed that denial to the BIA on August 7, 2018. *Id.* at 259-61. It is currently pending.

One day later, on August 8, 2018, Kharis petitioned this Court for habeas corpus relief. ECF No. 1 ("Pet.").

---

[1] Although this is an unofficial transcript of the official audio recording, a review of both does not disclose any material difference. The Court refers to the unofficial transcript for the benefit of the reader.

3

## II. MOTION TO SEAL

A party seeking to seal a document filed with the court must (1) comply with Civil Local Rule 79–5; and (2) rebut a "strong presumption in favor of access" that applies to all documents other than grand jury transcripts or pre-indictment warrant materials. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted).

With respect to the first prong, Local Rule 79-5 requires, as a threshold, a request that (1) "establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law"; and (2) is "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). An administrative motion to seal must also fulfill the requirements of Local Rule 79-5(d). "Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Civil L.R. 79-5(d)(1)(A).

With respect to the second prong, the showing required for overcoming the strong presumption of access depends on the type of motion to which the document is attached. "[A] 'compelling reasons' standard applies to most judicial records. This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (citation omitted) (quoting *Kamakana*, 447 F.3d at 1178). To overcome this strong presumption, the party seeking to seal a judicial record must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178-79 (internal quotation marks and citations omitted).

On the other hand, records attached to motions that are only "tangentially related to the merits of a case" are not subject to the strong presumption of access. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). Instead, a party need only make a showing under the good cause standard of Rule 26(c) to justify the sealing of the materials. *Id.* at 1097. A court may, for good cause, keep documents confidential "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

Because Kharis's habeas petition is more than tangentially related to the merits of his case,

4

the compelling reasons standard applies. "'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

Here, Kharis has filed an unopposed motion to file under seal portions of his asylum application that pertain to other individuals' applications. ECF No. 3; *see also* ECF No. 13. The first prong is met because the contents of asylum applications are generally confidential. *See* 8 C.F.R. § 208.6. The Court also agrees with Kharis that there are compelling reasons to keep this particular information confidential, given the sensitive nature of asylum applications alleging fear of persecution or harassment. Accordingly, the motion to file under seal is granted.

## III. LEGAL STANDARD

The government has detained Kharis pursuant to 8 U.S.C. § 1226(a), which authorizes his detention until judicial review of his application for asylum and withholding of removal is complete. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1065 (9th Cir. 2008).[2] In an initial bond determination under § 1226(a), the alien "must establish to the satisfaction of the [IJ] and the [BIA] that he or she does not present a danger to persons or property, is not a threat to the national

---

[2] 8 U.S.C. § 1226(a) provides in full:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on--
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole; but
> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

5

security, and does not pose a risk of flight." *Matter of Guerra*, 24 I & N Dec. 37, 40 (BIA 2006) (citing *In Re Adeniji*, 22 I. & N. Dec. 1102, 1112 (BIA 1999)); *cf.* 8 C.F.R. § 236.1(c)(8) (permitting DHS to release an alien detained under 8 U.S.C. § 1226(a) if the alien "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding").

Under the governing standards, the IJ should consider "any or all" of the following factors: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States; (4) the immigrant's employment history; (5) the immigrant's record of appearance in court; (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the immigrant's manner of entry to the United States. *Matter of Guerra*, 24 I & N Dec. at 40; *see also Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) (applying *Matter of Guerra* to § 1226(a)). But the IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Matter of Guerra*, 24 I & N Dec. at 40.

A detainee may appeal the IJ's determination to the BIA. 8 C.F.R. § 1003.19(f). A detainee may also request a subsequent bond redetermination from the IJ, but the request "shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." *Id.* § 1003.19(e).

**IV.     JURISDICTION**

8 U.S.C. § 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." Likewise, "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." *Id.*

Nevertheless, "a federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review [] bond hearing determinations for constitutional claims and legal error." *Singh*, 638 F.3d

at 1200-01; *see also Jennings v. Rodriguez,* 138 S. Ct. 830, 841 (2018) (8 U.S.C. "§ 1226(e) does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention without bail." (alterations in original) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). Section 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law," which, as the Ninth Circuit has explained, "includ[e] 'application of law to undisputed facts, sometimes referred to as mixed questions of law and fact.'" *Singh*, 638 F.3d at 1202 (quoting *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam)).

Thus, a district court has jurisdiction to review an IJ's discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional. *See De La Cruz Sales v. Johnson*, 323 F. Supp. 3d 1131, 1139 (N.D. Cal. 2017) (concluding that immigrant's claims were reviewable by district court where bond determination challenged as constitutionally flawed); *Obregon v. Sessions*, No. 17-CV-01463-WHO, 2017 WL 1407889, at *4 (N.D. Cal. Apr. 20, 2017) (same); *Castaneda v. Aitken*, No. 15-CV-01635-MEJ, 2015 WL 3882755, at *7-8 (N.D. Cal. June 23, 2015) (same); *Espinoza v. Aitken*, No. 5:13-CV-00512 EJD, 2013 WL 1087492, at *3 (N.D. Cal. Mar. 13, 2013) (same); *see also, c.f.*, *Saravia v. Sessions*, No. 17-CV-03615-VC, 2017 WL 5569838, at *2 (N.D. Cal. Nov. 20, 2017), *aff'd*, 905 F.3d 1137 (9th Cir. 2018) (ordering bond hearings for unaccompanied minors previously determined not to be flight risks or dangerous but re-detained because of changed circumstances under procedural due process).

While a district court has jurisdiction to review mixed questions of law and fact, it must be careful not to encroach upon "the IJ's discretionary weighing of the evidence." *Slim v. Nielson*, No. 18-CV-02816-DMR, 2018 WL 4110551, at *4 (N.D. Cal. Aug. 29, 2018); *see also Prieto-Romero*, 534 F.3d at 1058 ("[D]iscretionary decisions granting or denying bond are not subject to judicial review." (citing 8 U.S.C. § 1226(e)). Accordingly, where a habeas petitioner "asks the Court to second-guess the IJ's weighing of the evidence, that claim is directed solely to the IJ's discretion and is unreviewable." *Sales*, 323 F. Supp. 3d at 1139. But § 1226(e) does not bar courts from concluding that "[t]he evidence before the IJ failed, as a matter of law, to prove flight risk or danger." *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008); *see also Sales*, 323 F. Supp. 3d at 1141; *cf. Slim*, 2018 WL 4110551, at *5 (distinguishing between an

7

unreviewable challenge to "the IJ's discretionary weighing of factors in reaching a bond determination" and permissible challenges to "whether the party bearing the burden of proof met the applicable quantum of evidence"). In reviewing the sufficiency of the evidence within the confines of § 1226(e), therefore, the question is not "whether this Court believes that the proof establishes, by clear and convincing evidence, that [the petitioner] is a danger to the community" or a flight risk. *Nguti v. Sessions*, No. 16-CV-6703, 2017 WL 5891328, at *3 (W.D.N.Y. Nov. 29, 2017). Rather, the Court must decide whether the IJ "relied upon proof that – as a matter of law – could not establish" that conclusion. *Id.*; *see also Judulang*, 562 F. Supp. 2d at 1127. Though Kharis bore the burden of proof in this case, the scope of the Court's review remains the same. *See Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1004-05 (N.D. Cal. 2018) (dangerousness finding violated due process where IJ relied solely on evidence that did not support that conclusion).

Though not expressly mentioned by the parties, the Court also addresses the threshold question of the appropriate focus of its review. Here, the BIA has already adjudicated Kharis's appeal of the IJ's August 30, 2017 bond determination under de novo review. ECF No. 2 at 427-28. It is well-established outside of the habeas context that, where "the BIA conducts its own review of the evidence and law, [the court of appeals'] review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Villavicencio v. Sessions*, 904 F.3d 658, 663 (9th Cir. 2018). Similarly, in habeas claims under 28 U.S.C. § 2254, federal courts review the decision of the highest state court to have addressed the issue, although they may look through to a lower court's decision in some instances. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Accordingly, the Court concludes that, where applicable, the reasoning in the BIA's decision provides the basis for its review. This is consistent with the Ninth Circuit's instruction that in the ordinary course, detainees challenging bond determinations should first appeal their claims to the BIA. *See Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Of course, to the extent Kharis alleges procedural errors in the IJ's hearing itself or errors in the adjudication of Kharis's redetermination motions that have not yet been addressed by the BIA, the Court reviews the proceedings and the IJ's decisions directly.

8

## V. DISCUSSION

### A. Procedural Defects in the IJ's First Bond Determination

The Court first addresses Kharis's claims that procedural defects in his initial bond determination before the IJ deprived him of due process. Pet. ¶¶ 71-76.

The government argues that the Kharis has failed to exhaust two of the arguments supporting his claim that the IJ's first bond hearing violated procedural due process. The government objects first to Kharis's argument that the IJ violated due process by not allowing Kharis to orally testify at his hearing. ECF No. 14 at 12-13; Pet. ¶ 74. The government likewise objects to Kharis's contention that the IJ's post-hoc bond memorandum violated due process by including reasons not set forth in the IJ's oral decision. ECF No. 14 at 14-15; Pet. ¶ 75.[3]

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims" challenging bond determinations under 8 U.S.C. § 1226(a). *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Applying the prudential exhaustion requirement is appropriate when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). But a court may nonetheless waive the exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

The Court first applies these principles to Kharis's oral testimony claim. Kharis concedes that he did not raise this claim to the BIA but argues that he should be excused from exhaustion. ECF No. 16 at 5. Kharis reasons that the applicable Executive Office of Immigration Review

---

[3] The government does not object to any other claims as unexhausted. Because exhaustion is a prudential requirement in this context, *see Hernandez*, 872 F.3d at 988, the Court does not consider whether Kharis's remaining claims are exhausted.

("EOIR")[4] policy vests the IJ with discretion to allow or prohibit oral testimony, and so his constitutional challenge would have been futile. *Id.* The EOIR policy provides: "At the Immigration Judge's discretion, witnesses may be placed under oath and testimony taken. However, parties should be mindful that bond hearings are generally briefer and less formal than hearings in removal proceedings." Exec. Office of Immigration Review, *Immigration Court Practice Manual* § 9.3(e)(vi) (2017). The Court notes that the BIA "may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo," 8 C.F.R. § 1003.1(d)(3)(ii), and applied that standard to Kharis's appeal, ECF No. 2 at 427. To the extent Kharis argues that the IJ abused its discretion in denying oral testimony in his particular case, he could have raised that claim to the BIA. *See Chettiar v. Holder*, 665 F.3d 1375, 1379 n.2 (9th Cir. 2012) ("There is no administrative exhaustion requirement for constitutional due process challenges, but this exception is available only where the due process claim involves more than mere procedural error that an administrative tribunal could remedy."). The Court declines to waive the prudential exhaustion requirement for this "as-applied" argument because the BIA would have had the ability to correct this mistake and addressing it here would encourage petitioners to bypass the administrative scheme. *See Hernandez*, 872 F.3d at 988.

The Court next turns to Kharis's bond memorandum claim. Kharis argues that his brief to the BIA adequately put the BIA on notice of this claim by setting forth facts presented at the hearing that the IJ purportedly did not consider. ECF No. 16 at 5 (citing ECF No. 14-2 at 6). The Court disagrees. The stated thrust of Kharis's claim for relief to this Court is that "the IJ erred by failing to give an accurate account of the basis for his oral bond decision in [the written] memorandum decision," by relying on additional facts or conclusions not stated at the hearing. Pet. ¶ 75. Kharis's brief to the BIA, however, did not argue that those conclusions were an inaccurate reflection of the reasons for the IJ's oral decision, but rather that they were unreasonable conclusions in light of the record. ECF No. 14-2 at 3-4, 10-12. In other words,

---

[4] The BIA is a component of the EOIR. 8 C.F.R. § 1003.0(a). The Director of the EOIR supervises and directs the BIA and may "[i]ssue operational instructions and policy" regarding the performance of its duties, *id.* § 1003.0(b)(1)(i), but has no authority to adjudicate cases or direct the result of an adjudication before the BIA, *id.* § 1003.0(c).

10

Kharis challenged the merits of the IJ's written memorandum, but gave no indication to the BIA that Kharis thought the memorandum was procedurally flawed based on a degree of dissonance with the IJ's oral decision. This distinction is aptly demonstrated by Kharis's habeas petition, which argues that inaccuracies in the bond memorandum deprived him of effective appellate review because the BIA applied a "reasonableness" standard of review to the IJ's written findings. Pet. ¶ 75; ECF No. 16 at 6. But Kharis argued to the BIA that the IJ's findings were unreasonable, not that they were undeserving of "reasonableness" review. *See* ECF No. 14-2 at 10-11. Therefore, Kharis "did not give the BIA an opportunity to consider and remedy the particular procedural error[] he raises now." *Tall v. Mukasey*, 517 F.3d 1115, 1120 (9th Cir. 2008).[5]

Alternatively, Kharis argues that raising this claim would have been futile because the BIA's written decision demonstrates that it did not review any other parts of the record beyond the IJ's bond memorandum. ECF No. 16 at 5. As an initial matter, it is not clear why Kharis's premise leads to his conclusion; if Kharis had argued that the bond memorandum was inaccurate, the logical inference would be that the BIA would scrutinize the other evidence more closely. Moreover, there is no dispute that Kharis presented that information to the BIA. *See id.*; ECF No. 14-2 at 6-7. To the extent that the BIA's written decision evidences a failure to consider this evidence, the Court addresses that distinct argument below.

In declining to waive exhaustion for these two claims, the Court also takes note of the fact that Kharis was represented by counsel both in the initial bond hearing and on appeal to the BIA. *Cf. Soto v. Sessions*, 18-CV-02891-EMC, 2018 WL 3619727, at *5 (N.D. Cal. July 30, 2018).

Finally, the government does not object on exhaustion grounds to Kharis's related contention that he was deprived of due process because the agency did not provide a transcript of the bond hearing. Pet. ¶ 76. The Court rejects this argument on the merits because the Ninth

---

[5] The Court notes that the Ninth Circuit has expressed concern that a post-hoc bond memorandum alone is an inadequate record of the proceedings, because "once the court has entered judgment, it may become subject to the very natural weight of its conviction, tending to focus on that which supports its holding." *Singh*, 638 F.3d at 1208. But the *Singh* court held that such a post-hoc bond memorandum *was permissible*, provided that it was accompanied by a contemporaneous audio recording or transcript. *Id.* at 1209. Thus, while the Ninth Circuit acknowledged the potential for a post-hoc bond memorandum to distort the evidence before the IJ at the hearing, it concluded that a contemporaneous record provided an adequate check.

Circuit has held that an audio recording of the hearing, which was provided here, satisfies due process. *Singh*, 638 F.3d at 1208.

**B. Reliance on a Red Notice**

The Court next turns to whether due process permits reliance on an Interpol Red Notice. Pet. ¶¶ 78-81. Kharis emphasizes – and the government does not dispute – that the Department of Justice's ("DOJ") own guidance states that "the United States does not consider a Red Notice alone to be a sufficient basis for the arrest of a subject because it does not meet the requirements for arrest under the 4th Amendment to the Constitution." Pet. ¶ 79 (quoting ECF No. 4-4 at 22).

The parties have not cited, nor has this Court located, any case law directly addressing the due process implications of relying on a Red Notice for a bond determination. Moreover, even the indirect authority the Court has been able to locate addresses the question of dangerousness, rather than the risk of flight that is at issue here.

In *Soto v. Sessions*, the petitioner claimed that a Red Notice had been issued based on an interrogation in which she was tortured. No. 18-CV-02891-EMC, 2018 WL 3619727, at *1 (N.D. Cal. July 30, 2018). However, the district court did not directly address the validity of relying on the Red Notice because the petitioner sought only a new bond hearing with the burden of proof on the government, but did not provide any information that indicated that "the shift would make any difference to the outcome." *Id.* at 4. In reaching this determination, the *Soto* court noted that it was "unclear, for example, if the government relied only on an international warrant (hearsay) to demonstrate danger to the community, and whether Ms. Soto offered any testimony under oath to challenge the warrant which was unrebutted." *Id.* *Soto* thus suggests a concern with relying solely on the underlying conduct alleged in a Red Notice to determine dangerousness, particularly when rebuttal evidence is offered.

The extent to which alleged conduct may form the basis for a finding of dangerousness is more settled in the context of domestic criminal charges. In *Matter of Guerra*, the BIA held that IJs "are not limited to considering *only* criminal convictions in assessing whether an alien is a danger to the community," but rather could rely on "probative and specific" evidence of dangerousness contained in a criminal complaint. 24 I & N. Dec. at 40. *Ortega-Rangel*, on

which Kharis places great reliance, is not to the contrary. There, the court concluded that the IJ violated due process by finding that the petitioner "was a danger to the community solely because she was *arrested* for possession for sale of a controlled substance," reasoning that "no court or grand jury had determined that there [wa]s probable cause to believe that she in fact had done so." 313 F. Supp. 3d at 1004. The court explained that an IJ may, consistent with due process, rely on pending criminal charges to make a dangerousness finding "if the evidence supporting the charge is specific and probative." *Id.* at 1005 (citing *Matter of Guerra*, 24 I & N. Dec. at 40). But in *Ortega-Rangel*, the IJ had relied on the dangers to the community of selling drugs, while the underlying facts showed only that the petitioner was "aware that her boyfriend at the time sold drugs," not that she herself had sold drugs. *Id.* at 1004-05. Conversely, even where convictions are involved, "criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness." *Singh*, 638 F.3d at 1206.

Kharis's main point, which is well taken, is that the constitutional problems of relying on criminal charges are compounded when a foreign nation can initiate those charges without satisfying a probable cause standard. ECF No. 4-4 at 22; *see also Soto*, 2018 WL 3619727, at *4 (deeming a Red Notice "hearsay"). The Third Circuit recently decided the habeas appeal of Kharis's business partner Borbot, but did not address these issues because "[t]he duration of Borbot's detention [wa]s the sole basis for his due process challenge." *Borbot v. Warden Hudson Cty. Corr. Facility*, -- F.3d --, 2018 WL 4997934, at *2 (3d Cir. Oct. 16, 2018).[6] The Third Circuit denied that challenge, but in dissent, Judge Roth forcefully explained her view that "[i]t has become clear that the Russian government has been employing Interpol alerts or 'Red Notices' to pursue and harass opponents of the Russian regime" and that a new hearing was "necessary to prevent a foreign government from improperly influencing our immigration courts." *Id.* at *5-6 (Roth, J., dissenting).

Judge Roth expresses legitimate concerns, and the evidence Kharis has submitted

---

[6] In Borbot's case, the BIA issued an unpublished, non-precedential decision rejecting similar arguments that the IJ gave too much weight to the Red Notice in finding Borbot a danger to property. *In Re: Igor Viktorovich Borbot A.K.A. Igor Borbot*, 2016 WL 7655983, at *2 (DCBABR Sept. 1, 2016). The Third Circuit did not address that aspect of the BIA's decision.

13

regarding both Russia's use of Red Notices generally and the specific use as to him, if true, cast doubt on whether the Red Notice here is a legitimate basis for concluding that Kharis committed a crime. Nonetheless, the Court cannot hold that a Red Notice – even one originating from Russia – is entitled to no weight as a matter of law. Stated differently, it does not violate due process to give a Red Notice at least some weight in the context of determining whether a detainee poses a flight risk. The Court is aware of no authority holding to the contrary, and it comports with common sense that the existence and seriousness of pending criminal charges appropriately have an impact on the flight risk analysis. *Cf. United States v. Cisneros*, 328 F.3d 610, 618 (10th Cir. 2003) (reasoning that an increase in the severity of the penalty charged could reasonably increase a criminal defendant's flight risk). Moreover, unlike in *Ortega-Rangel*, which dealt with the question of dangerousness, the allegations in the Red Notice are "specific and probative" of the question of flight risk. 313 F. Supp. 3d at 1005. If Kharis did in fact participate in a scheme to embezzle roughly $114 million, those resources are relevant to whether he has the means to flee, whether he has a motive to flee, and whether any amount of bond would provide a sufficient incentive to appear.

Because the IJ and the BIA were entitled to place some weight on the Red Notice in their analysis of flight risk, the Court generally lacks jurisdiction to review whether they placed too much. *See De La Cruz Sales*, 323 F. Supp. 3d at 1139. On the other hand, given the evidence of the serious flaws in the Red Notice process, the Court has doubts regarding whether Kharis's Red Notice alone is sufficient to support a flight risk finding as a matter of law. *See Judulang*, 562 F. Supp. 2d at 1127. But the Court need not reach that issue, as explained below.

C. **Failure to Consider Evidence**

Finally, the Court considers Kharis's claims that the agency failed to meaningfully consider his evidence. Pet. ¶¶ 83-95.

"[T]he Due Process Clause requirement of a full and fair hearing, mandates that the" BIA "review all relevant evidence submitted on appeal." *Larita-Martinez v. I.N.S.*, 220 F.3d 1092, 1095 (9th Cir. 2000) (internal quotation marks and citation omitted); *see also Vilchez v. Holder*, 682 F.3d 1195, 1198 (9th Cir. 2012) (applying same standard to IJ decisions). However, "an alien

14

attempting to establish that the Board violated his right to due process by failing to consider relevant evidence must overcome the presumption that it did review the evidence." *Larita-Martinez*, 220 F.3d at 1095-96. The agency's failure to mention specific evidence, by itself, does not overcome this presumption. *Id.* at 1096; *see also Fernandez v. Gonzales*, 439 F.3d 592, 603 (9th Cir. 2006) (same). But where the agency's discussion of the record demonstrates that it has not "adequately considered the full record," due process requires the agency to reconsider its bond determination on a full record. *Ramos*, 293 F. Supp. 3d at 1033; *cf. Obregon v. Sessions*, No. 17-CV-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017) (expressing concern that "the IJ may not have adequately considered all of the available evidence in assessing petitioner's present dangerousness" based on inaccuracies and gaps in the IJ's decision).[7] "Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence." *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011).[8]

### 1. BIA Review of August 30, 2017 Bond Determination

Kharis argues that the BIA ignored or did not meaningfully consider six pieces of evidence: (1) that a Red Notice restricts an individual's ability to travel; (2) Russia's track record of abusing Red Notices; (3) Kharis's disclosure of the Red Notice in his asylum application; (4) Kharis's role as primary caregiver to two children; (5) Kharis's children's pending asylum case; and (6) various other local ties, including a long-term lease, Kharis's acceptance to the Stanford Graduate School of Business, and the enrollment of Kharis's children in after-school programs in San Francisco. Pet. ¶¶ 84-89.

As a threshold matter, the Court notes that the BIA's failure to mention each specific piece of evidence in its order or cite to the audio recording is not dispositive. *See Larita-Martinez*, 220 F.3d at 1095-96.

---

[7] Because due process requires consideration of all relevant evidence, the Court need not determine the degree to which 8 U.S.C. § 1226(a) does so as well.

[8] The Ninth Circuit made this point in the context of a Convention Against Torture (CAT) claim, where the regulations provide that "all evidence relevant to the possibility of future torture shall be considered." *Id.* (emphasis omitted) (quoting 8 C.F.R. § 1208.16(c)(3)). But the Court concludes that same inference is appropriate here, where due process imposes the same obligation. *See Larita-Martinez*, 220 F.3d at 1095; *Ramos*, 293 F. Supp. 3d at 1034.

15

Kharis argues, though, that the BIA misstated the record because it erroneously characterized his application for asylum as speculative, *see* ECF No. 2 at 428, given that he had affirmatively applied for asylum while in lawful status and that the substance of his asylum claim was related to the Red Notice charges. ECF No. 16 at 11. The BIA has explained that a detainee "with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief." *Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987). If the BIA makes "an unambiguous misstatement of law" in describing the petitioner's prospects of avoiding removal, this legal error may fatally infect a flight risk determination. *Zabaleta v. Decker*, No. 18-CV-1802 (JGK), 2018 WL 4473340, at *4 (S.D.N.Y. Sept. 17, 2018). In *Zabaleta*, for instance, the BIA had stated that the petitioner's ongoing merits appeal was futile because he had "aged out of [Special Immigrant Juvenile ("SIJ")] status," but the relevant law "explicitly fr[oze] the age of an SIJ status applicant as of the date of the applicant's filing of an SIJ status petition." *Id.* (citing 8 U.S.C. § 1232(d)(6)).

But here, the BIA's assessment of Kharis's eligibility for relief from removal was not an objective misstatement of the law. Kharis's bond proceedings are "separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding," 8 C.F.R. § 1003.19(d), and his application for relief was still pending before the IJ. The BIA did not unambiguously misstate the law or the record in deeming Kharis's eligibility speculative. In the context of Kharis's argument that the BIA did not consider his evidence, the Court is not deciding whether the BIA's assessment was accurate, but rather whether it was so wholly inconsistent with the record that it rebuts the presumption that the BIA considered all the evidence. *See Larita-Martinez*, 220 F.3d at 1095-96. The Court finds that the BIA's statement does not meet that standard, particularly given that the IJ ultimately did deny Kharis's application on the merits, and his merits appeal is pending before the BIA. ECF No. 4-4 at 268-69. This procedural posture also undermines Kharis's ability to show prejudice at this stage, because the IJ's merits denial generally weighs in favor of a flight risk finding. *See Matter of D-J-*, 23 I. & N. Dec. 572, 582 (2003) ("The IJ's denial of the respondent's application for asylum increases the risk that the

16

respondent will flee if released from detention.").

However, the Court agrees with Kharis that the BIA's decision does not mention "highly probative" evidence on which Kharis relied. *Cole*, 659 F.3d at 772. Notably, it treated the Red Notice and the underlying allegations as unambiguously supporting a flight risk finding, without any discussion of Kharis's argument and supporting evidence that a Red Notice makes it significantly more difficult to travel internationally. ECF No. 14-2 at 10 (citing ECF No. 2 at 314). Nor did the agency discuss Kharis's evidence attacking the reliability of the process by which those notices are issued and Russia's track record of abuse. *See, e.g.*, ECF No. 2 at 301-02, 384, 386-89, 391-92, 394-95. The Court has previously expressed its doubts that a Red Notice by itself could be sufficient to support a detention finding, given both the Justice Department's stated concerns and the evidence submitted by Kharis. And because the BIA did not give adequate consideration to evidence undermining the reliability of the Red Notice allegations, its conclusion that the alleged embezzlement precluded any amount of bond rested on similarly shaky foundations. ECF No. 2 at 427-28.

### 2. IJ Review of Motions for Redetermination

If the IJ had subsequently given Kharis's evidence adequate review in his motions for redetermination under 8 C.F.R. § 1003.19(e), it could possibly have cured these defects, as Kharis arguably would not have been prejudiced. The Court concludes, however, that the IJ failed to adequately consider the evidence supporting Kharis's July 7, 2018 motion.[9]

In the IJ's post hoc bond memorandum, the IJ explained that Kharis had presented "evidence to question the probative value of Interpol Red notices," but concluded that the "new evidence is not material as similar evidence was considered" in the original bond hearing. ECF

---

[9] The Court does not determine the due process adequacy of the IJ's ruling on the March 2, 2018 motion, because the IJ did not issue a post-hoc bond memorandum that would permit such review. In this context, the IJ's use of a form order does not by itself violate due process. Under EOIR policy, IJs do not prepare a written, reasoned statement of decision unless the bond determination is appealed. *See* Exec. Office of Immigration Review, *Immigration Court Practice Manual* § 9.3(e)(vii). Given this policy, the Court cannot conclude that the IJ's cursory minute order violates Kharis's due process rights or reflects a failure to consider evidence, when Kharis could have obtained a reasoned statement of decision by filing an appeal, as he did for the IJ's denial of the July 7, 2018 motion for redetermination.

17

No. 11 at 21. True, some of Kharis's evidence was relatively similar, albeit stronger. For instance, that the DOJ does not consider a Red Notice a basis for arrest, Pet. ¶ 93, strengthens Kharis's earlier argument that Red Notices in general are unreliable. Similarly, that Russia is a frequent abuser of Interpol's lax procedural checks to obtaining a Red Notice, *id.* ¶ 94, builds on Kharis's prior argument that Red Notices from Russia are especially unreliable.

But Dr. Bromund's report analyzed in detail why *Kharis's* Red Notice, in particular, was likely fraudulent. ECF No. 4-4 at 49-53. This evidence was different in kind, not just in degree, and seemingly highly probative as to the agency's primary rationale for Kharis's ongoing detention. Due process obligated the IJ to mention such evidence and if the IJ concluded that § 1003.19(e) was not satisfied, explain why the evidence did not demonstrate a material change.

Ultimately, at no point during Kharis's motions for bond redeterminations or his appeal of his initial determination did the agency expressly grapple with a substantial, well-supported argument that Kharis's Red Notice was at most minimally probative as to whether he was a flight risk. The constitutional guarantee of due process requires more. *See Tadevosyan v. Holder*, 743 F.3d 1250, 1258 (9th Cir. 2014) ("Due process and [Ninth Circuit] precedent require a minimum degree of clarity in dispositive reasoning and in the treatment of a properly raised argument." (citation omitted)).[10]

### D. The Relief Due

Having concluded that Kharis did not receive due process in the adjudications of his prior bond determinations, the Court now decides what relief is due. The Court has identified due process errors in both the BIA's adjudication of Kharis's first appeal and in the IJ's adjudication of Kharis's subsequent § 1003.19(e) motions. Were the only motion at issue Kharis's first appeal, "the appropriate remedy [would be] to vacate the decision of the BIA and to remand the petitioner's bond revocation proceeding to the BIA for a determination of the petitioner's bond

---

[10] Admittedly, this argument placed the IJ in a tough position with relatively imperfect information. But the IJ did himself no favors by exercising his discretion to exclude Kharis's oral testimony. *See Oshodi v. Holder*, 729 F.3d 883, 892-93 (9th Cir. 2013) (en banc) ("By precluding [the petitioner] from testifying about the critical events [at issue], the IJ short-circuited his ability to judge accurately [the petitioner's] credibility.").

18

revocation appeal and any other relief the BIA finds appropriate." *Zabaleta*, 2018 WL 4473340, at *4. Since the BIA's decision, however, Kharis has produced additional evidence that the IJ failed to properly consider. Given that the IJ is best positioned to develop the factual record and assess credibility, the Court concludes that the interests of justice are best served by requiring that the government provide a new bond hearing before the IJ which complies with due process within a certain amount of time. *See, e.g.*, *Ortega-Rangel*, 313 F. Supp. 3d at 1005; *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1147 (N.D. Cal. 2018); *Ramos v. Sessions*, No. 18-CV-00413-JST, 2018 WL 905922, at *5 (N.D. Cal. Feb. 15, 2018). Kharis is ordered released unless the government holds a bond hearing which comports with due process within 24 days of the issuance of this order.

## CONCLUSION

For the foregoing reasons, Kharis's petition for a writ of habeas corpus is granted in part. The government is enjoined from detaining Kharis unless it holds a bond hearing which comports with due process within 24 days from the issuance of this order.

**IT IS SO ORDERED.**

Dated: November 6, 2018

JON S. TIGAR
United States District Judge